IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA**

        **Plaintiff,**

        **v.**                                           **Case No.  05-20033 JWL**

**DOUGLAS WELCH,**

        **Defendant.**

_____

**MEMORANDUM AND ORDER**

This case concerns two searches of the residence of the defendant, Douglas Welch, at 12233 Fairway in Leawood, Kansas, that uncovered evidence of illegal drug manufacturing and child pornography.  This matter comes before the court on Mr. Welch's motions to suppress drug manufacturing evidence seized using a search warrant executed on August 10, 2001, (doc. # 30) and child pornography evidence seized using search warrants  executed on August 10 and August 14, 2001 (doc. #  31).  The court held an evidentiary hearing on October 28, 2005.  For the reasons explained below, the court will deny both of Mr. Welch's motions to suppress.

**The Evidence at the Hearing**

Drug Enforcement Agency Special Agent Michael Scalise testified that throughout two years leading up to Mr. Welch's arrest on August 10, 2001, he had been involved in trash pulls

at Mr. Welch's house to uncover evidence of methamphetamine or MDMA manufacturing, including glassware and precursor chemicals. He established that Mr. Welch's phone records showed over 30 calls in 2000 for several thousands of dollars in highly-سophisticated lab equipment.

In addition, he established that Ms. Sherry Peyton, Mr. Welch's former live-in girlfriend, had contacted the police on August 9, 2001, regarding Mr. Welch's manufacturing of MDMA (commonly known as ecstacy) and methamphetamine from January 2000 until January 2001. Based on the force of Ms. Peyton's tip, that day the agents obtained and executed a search warrant for a house owned by Mr. Welch on 8620 W. 80th Street in Overland Park, Kansas. At that residence, the agents found nearly thirty boxes that appeared to belong to Mr. Welch. The agents had the occupant of the house, William Scott Holt, make a controlled delivery of several of these boxes to Mr. Welch's primary residence at 12233 Fairway at 3 A.M. on August 10. Only seven to ten of the 30 total boxes were delivered, and Agent Scalise was unsure exactly which boxes were delivered to Mr. Welch that morning. Shortly after the 3 A.M. controlled delivery and after Mr. Holt had safely left the area, the agents arrested Mr. Welch while he was handling the boxes in his garage, which was open.

Upon arresting Mr. Welch, Agent Scalise took him into the residence to talk more privately. He testified that he read Mr. Welch his *Miranda* rights but did not have Mr. Welch sign a waiver form. The agents then conducted a protective sweep of the residence for their own safety because although they had the 12233 Fairway Street residence on surveillance

roughly fifteen minutes before the controlled delivery, they were unsure whether anyone other than Mr. Welch was inside. Agent Scalise testified that at that time, he believed there was no need to obtain an arrest warrant because he had probable cause based on the controlled delivery that Mr. Welch had accepted. He testified that the agents had not planned in advance to arrest Mr. Welch inside the garage; that was simply how the events unfolded.

The cross-examination of Agent Scalise uncovered that the agents had been up for 36 consecutive hours and might have acted hastily to arrest Mr. Welch, but they wanted to secure the items and so they "kept the momentum going." Agent Scalise also admitted that the affidavit used to obtain the August 10 search warrant did not provide a nexus to the 12233 Fairway Street residence in all of the numbered paragraphs. Although Mr. Welch had boxed up the glassware and chemicals and stored them at his 80th Street house, Agent Scalise stated that based on his experience, someone with that much of an investment would not stop manufacturing methamphetamine, especially if addicted to it. Agent Scalise's testimony was uncertain regarding the items in plain view at the time of the protective sweep, but he later testified that he was not the one who photographed these items. Agent Scalise repeatedly stated that he believed there was probable cause to arrest Mr. Welch based on the totality of the precursor chemicals and the glassware all taken together, combined with the statement by Ms. Peyton and the controlled delivery that morning.

A computer forensics specialist for the Overland Park Police Department, Vincent Castaldo, also testified at the hearing. He did a forensics search of two or three of the hard

drives from the computers seized on August 10 from Mr. Welch's 12233 Fairway residence. Upon arriving at Mr. Welch's residence that day, he knew that it was a drug case in which the suspect's computer(s) might contain information about drugs.  Accordingly, he testified that he copied the hard drives of the computers seized and searched only within the bounds of the authority granted by the warrant.  Specifically, he testified that he knew that based on the warrant's clear, limiting language, his search could not exceed the scope of methamphetamine or MDMA.  In line with this, he recalled searching for images on how to design a lab or manufacture methamphetamine or MDMA, as well as images of glassware or drug formulas.

In conducting this search for images, he searched the so-called unallocated portion of the hard drive, which he described as an area of the hard drive that does not have a folder structure and contains deleted files and images.  Within this area, however, he did not expand his search beyond the parameters of authority granted by the language of the warrant.  He recalled that before he discontinued his search, he accessed over 100 images, many of which were not descriptively named.  Somewhere within those images, he discovered 11 images he believed could be child pornography.  Upon finding these 11 images, he stopped the search based on "a judgment call"[1] that this justified obtaining an additional search warrant directed at child pornography.  He then contacted a colleague, Detective Frank Feden, to do so.

---

[1] Mr. Castaldo testified that standard training was that "once child pornography is discovered, get a warrant." During cross-examination, he clarified that he "determined 11 [images] to be significant" enough to justify obtaining an additional search warrant.

4

Detective Feden applied for and then obtained an additional search warrant for 12233 Fairway based on a 20-page affidavit. Agents executed this warrant on August 14, 2001, and uncovered several more images of child pornography on Mr. Welch's computers.

## Analysis

Authorities executed two search warrants at Mr. Welch's primary residence at 12233 Fairway. The first search occurred on August 10, 2001, and the second search occurred on August 14, 2001. Mr. Welch challenges both searches, and he separates these challenges into two separate motions to suppress. For convenience, the court will analyze the two separate motions based on their subject matter under the headings of "The Precursor Chemicals and Glassware Search" and "The Computer Search."

**1.    The Precursor Chemicals and Glassware Search**

The warrant for the August 10 search at 12233 Fairway was based on an affidavit submitted by Agent Scalise. His affidavit included the following uncontroverted[2] information: (1) Authorities received an anonymous, but unsupported tip in June 2000 that Mr. Welch had significant amounts of the illegal drugs GHB and MDMA; (2) At least five trash pulls of Mr.

---

[2] Mr. Welch alleges that Agent Scalise's affidavit includes materially false statements after the third sentence of paragraph seventeen. Even though Mr. Welch did not prove by a preponderance of the evidence his allegations of material falsity, for argument's sake the court will only examine the affidavit up to that point to determine the sufficiency of the affidavit in establishing probable cause for the warrant. *See United States v. Cusumano*, 83 F.3d 1247, 1250 (10th Cir. 1996) ("[W]e may disregard allegedly tainted material in the affidavit and ask whether sufficient facts remain to establish probable cause.").

Welch's trash from August 2000 to October 2000 uncovered discarded precursor chemicals consistent with drug manufacturing, methamphetamine residue on glassware, and phone records showing several thousands of dollars of lab equipment; (3) On August 9, 2001, Ms. Peyton, who was living with Mr. Welch until two weeks before, informed the Leawood, Kansas, police that from January 2000 until January 2001, Welch manufactured MDMA and that during October 2000 Welch manufactured methamphetamine.  She also informed the police that Welch had boxed up and stored the glassware and precursor chemicals used in his operations at a house he owned at 8620 W. 80th Street; (4) After obtaining and executing a search warrant for this house on 8620 W. 80th Street on August 9, 2001, the police had the occupant, Mr. Holt, make a controlled delivery of several of these boxes to Mr. Welch's primary residence at 12233 Fairway at 3 A.M. on August 10, 2001; (5) During this controlled delivery, Mr. Holt told Mr. Welch that Ms. Peyton "was upset and may contact the police and he wanted the boxes out of the residence"; and (6) Mr. Welch accepted delivery of these boxes from Mr. Holt.

Based on this affidavit, the warrant authorized authorities to seize property that constituted evidence of a federal crime and was limited to the following items:

> MDMA, methamphetamine, precursor chemicals, glassware, any and all chemicals and apparatus that either have been or could be used to manufacture a controlled substance, drug records, U.S. Currency, firearms that may facilitate the possession, protection or distribution of MDMA or methamphetamine, formulas containing methods to manufacture MDMA or methamphetamine, and computers.

6

Regarding the search on August 10 for precursor chemicals and glassware, Mr. Welch primarily argues that: (1) Agent Scalise's affidavit includes materially misleading information that is deliberately or recklessly included or omitted; and (2) the evidence included in the affidavit is too stale to establish probable cause. The government responds that the good faith doctrine—emanating from *United States v. Leon,* 468 U.S. 897 (1984) and its progeny—validates the search and should lead the court to deny the motion to suppress because Mr. Welch cannot identify a knowing or reckless omission or false statement. For the reasons explained below, the court agrees with the government.

### A.   **Good Faith Doctrine**

The good faith doctrine evolved because "when police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause." *United States v. Lora-Solano*, 330 F.3d 1288, 1294-95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913*; United States v. Price,* 265 F.3d 1097, 1102 (10th Cir. 2001)). This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by magistrates." *United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005).

The doctrine upholds the authority granted to law enforcement agents who obtain a valid search warrant. Because searches approved by a warrant "are favored," "a magistrate's determination that probable cause exists is entitled to great deference." *United States v. Gonzales*, 399 F.3d 1225, 1228-29 (10th Cir. 2005). Likewise, officers are generally not

required to second-guess the magistrate's decision in granting a warrant. Accordingly, "evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith." *Id*. (citing *Leon*, 468 U.S. at 916). Rather than decide the issue *de novo* in hindsight, this court must give "great deference" to the issuing judge's finding of probable cause. *United States v. Le,* 173 F.3d 1258, 1265 (10th Cir. 1999).

To be sure, "the deference given to such warrants 'is not boundless.'" *Gonzales*, 399 F.3d at 1229. In *Gonzales*, the Tenth Circuit examined the four exceptions to reliance on the good faith doctrine. As in that case, "Two of these contexts are at issue here: (1) where the magistrate 'was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth,' and (2) where the supporting affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* The Tenth Circuit's recent analysis in *Gonzalez* guides this court's examination of these two possible impediments to applying the good faith doctrine to the August 10 search for precursor chemicals and glassware.

**1.    Material Falsity or Omission Based on a Reckless or Intentional Act**

The *Gonzales* court held that "to establish a lack of good faith where information has been omitted from the affidavit, the defendant must prove by a preponderance of the evidence that the officer acted intentionally or recklessly." *Id.* (citing *Franks v. Delaware,* 438 U.S. 154, 171 (1978)). Thus, Mr. Welch bears the burden of proof.

8

In this case, Mr. Welch did not point to any evidence, or even any inference that Agent Scalise intentionally or recklessly included or withheld any material information in his affidavit. In arguing this point, Mr. Welch contended: (1) that Agent Scalise did not read him his *Miranda* warnings; and (2) that the government executed a pretextual protective sweep. Agent Scalise's testimony on both of these points, however, was consistent and credible. And even if the court were to follow Mr. Welch's request and omit from the affidavit any of the events occurring after the controlled delivery to Mr. Welch's 12233 Fairway residence, the court would not find a material change in the quantum of probable cause. As in *Gonzales*, "Thus, the most that can be established is that the officer omitted the information out of 'negligence or innocent mistake,' which is insufficient to overcome a finding of good faith." *Id.* (citing *Franks,* 438 U.S. at 171). Thus, Mr. Welch's first argument against applying the good faith doctrine fails.

**2.   Affidavit Lacks Indicia of Probable Cause**

In *Gonzales*, the Tenth Circuit cautioned that merely because "the detective employed a reasonable process in seeking the warrant" does not necessarily establish good faith under *Leon*. 399 F.3d at 1230. Officers must rely on their own professional experience "and are presumed to have a reasonable knowledge of the law." *Id*. (citing *Leon,* 468 U.S. at 919 n.20). This court cannot find good faith if a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (citing *Leon*, 468 U.S. at 922 n.23). "Under this standard, when the underlying documents are 'devoid of factual support,'

an officer cannot be said to have relied on them in good faith." *Id.* (citing *Corral-Corral,* 899 F.2d at 939).

Making a practical, common-sense determination, probable cause existed if Agent Scalise's affidavit established "a fair probability that contraband or evidence of a crime" existed at Mr. Welch's 12233 Fairway residence. *Illinois v. Gates,* 462 U.S. 213, 238 (1983). Probable cause does not require certainty that evidence will be found at a certain location. *United States v. Hargus,* 128 F.3d 1358, 1362 (10th Cir.1997). "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *United States v. Soderstrand*, 412 F.3d 1146, 1152-53 (10th Cir. 2005). At bottom, the court must find "a minimal nexus between the place to be searched and the suspected criminal activity is established." *Gonzales*, 399 F.3d at 1231.

Agent Scalise's affidavit drew that nexus in this case because the controlled delivery was directly to Mr. Welch's 12233 Fairway residence, the focus of the warrant. Although standing alone each item in Agent Scalise's affidavit does not establish probable cause, taken in their totality these items become legally significant. Above all, the controlled delivery on the day the agents obtained the search warrant and later executed it provided a "minimal nexus" between Mr. Welch's 12233 Fairway residence and the information given by Ms. Peyton. Taken together, the anonymous tip, the five trash pulls yielding incriminating evidence, the execution of the August 9 search warrant at 8620 W. 80th Street, the tip by Ms. Peyton, and the controlled delivery on the morning the agents obtained the warrant all establish that the officers had probable cause. Ms. Peyton's tip was far from anonymous–she had lived with Mr.

Welch and offered detailed information of his drug manufacturing.  *Cf*. Jenkins, 313 F. 3d 549, 553-55 (10th Cir. 2002) (discussing the reliability of an informant using the totality of circumstances test).  Finally, the agents had obtained an earlier search warrant on August 9 for the 8620 W. 80th Street residence based on even less suspicion than they had the next day, on August 10.  This confirms that they did not act unreasonably in obtaining and executing the August 10 warrant.

Mr. Welch makes a related argument that the evidence in this case was too stale to establish probable cause.  Although the investigation against him had stalled, the agents resurrected it after Ms. Peyton's highly probative August 9 tip.  And just hours before agents obtained the August 10 warrant, Mr. Welch accepted the controlled delivery and stored the boxes of precursor chemicals and glassware in his garage.  Given this burst of new evidence, the affidavit included information that "effectively corroborated or 'refreshed' the allegedly 'stale' information" in the earlier paragraphs of the affidavit."  *United States v. Harris*, 369 F.3d 1157, 1166 (10th Cir. 2004).  *See also United States v. Schirber*, 139 Fed. Appx. 64 (10th Cir. 2005) (rejecting the defendant's claim that the evidence was too stale to establish probable cause).  Thus, the evidence against Mr. Welch was not stale.

Based on all of the above reasons, Mr. Welch cannot overcome the government's reliance on the good faith doctrine.  Although the government does not concede that the agents lacked probable cause, even if they did, they still acted reasonably in executing the August 10 search warrant.  Here, the "extreme sanction of suppression is inappropriate."  *United States*

11

*v. Corral-Corral,* 899 F.2d at 940.  In the end, the agents' good faith reliance on an authorized search warrant was not "entirely unreasonable." *Leon,* 468 U.S. at 922 n.23.

**2.     The Computer Search**

Mr. Welch also challenges the searches of his computers for files or images related to MDMA or methamphetamine.  As stated earlier, the August 10 search warrant authorized the following search:

> MDMA, methamphetamine, precursor chemicals, glassware, any and all chemicals and apparatus that either have been or could be used to manufacture a controlled substance, drug records, U.S. Currency, firearms that may facilitate the possession, protection or distribution of MDMA or methamphetamine, formulas containing methods to manufacture MDMA or methamphetamine, and computers.

At first glance, the term "computers" seems to be free-floating so that it enables a general search of Mr. Welch's computers.  However, as explained below, the context of the term "computers" within the search warrant is legally significant.  As Mr. Castaldo's testimony established, the agents understood that the warrant did not authorize a general search, and no general search in fact occurred.  Mr. Welch challenges both the scope of the searches, as well as the computer search methodology.  The court will address both arguments in turn.

**A.     Scope of the Searches**

The Fourth Amendment requires that a search warrant contain a description of the things to be seized with "sufficient particularity to prevent a general exploratory rummaging in a person's belongings."  *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000).  The

particularity requirement prevents general searches. By limiting authorization only to search the specific areas, this requirement keeps a search carefully tailored to its justifications and prevents "the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

Mr. Welch argues that the August 10 search warrant was not sufficiently particular because the warrant failed to state a particular description of what the agent could search and thus did not "enable the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982).

Although the description of the drug-related items in the language of the warrant is not limited to any specific computer in Mr. Welch's residence, the description enabled the searcher to reasonably ascertain and identify the things authorized to be searched and seized. In this case, authorities directed the warrant at items related to drug records and formulas for containing methods to manufacture MDMA or methamphetamine stored on Mr. Welch's computers. Further, Mr. Castaldo testified that he limited his search because he knew the warrant's language limited his authority. He testified that he understood he could only search for evidence related to MDMA or methamphetamine, and his testimony was credible.

Here, the agents did not exceed the scope of the warrant. Mr. Welch contends that agents did not seek additional authorization for an expanded search in a timely manner. Mr. Welch argues that *Carey* controls this case, but this case is vastly different from *Carey*, where the agents embarked on a full-fledged "fishing expedition" and made no attempt to constrain

their search to the language of the warrant. While the agents in *Carey* were searching for drug evidence, officers came across evidence of child pornography and expanded their search of the computer for additional pornographic images. The agents never attempted to obtain an additional warrant despite finding several hundreds of images of child pornography. Also, the hundreds of images in *Carey* had sexually explicit titles, which obviously forewarned the agents that the files likely contained at least some form of pornography. In this case, however, the agents obtained an additional warrant and the titles of the files were nondescript. These two distinctions distance this case from *Carey*.

Instead, the facts of this case are much more analogous to the facts in the very recent case of *United States v. Brooks*, – F.3d –, 2005 WL 2767185 (Oct. 26, 2005). There the Tenth Circuit observed, "More importantly, [the agent] viewed only a few images on Brooks's computer before turning off the computer, seeking the advice of counsel, and then obtaining the forensic search warrant from a neutral magistrate for the completion of the search." *Id*. The court acknowledged that the warrant did not explicitly instruct agents only to search for a particularized subject matter, but "in context" the language of the warrant as a whole "more naturally instructs officers to search those files only for evidence" related to the particular subject matter–in that case, child pornography, and in this case, drugs. *Id*. Based on the Tenth Circuit's more recent clarification in this context, the court does not find that the agents exceeded the scope of the August 10 search warrant.

Here, the warrant authorized officers to search Mr. Welch's computers for items related to MDMA and methamphetamine. During the search of the unnamed files, Mr. Castaldo opened 11 images containing possible child pornography. He then terminated the search and properly sought an additional search warrant. Because the officer sought a second warrant after finding a minimal number of images containing child pornography, he did not exceed the scope of the August 10 warrant. The motion to suppress the search of Mr. Welch's computer for evidence of drugs, which resulted in the additional warrant to search for child pornography, is denied.[3]

## B.   Search Methodology

Mr. Welch also argues that the officers exceeded the scope of the warrant by failing to employ a sufficient search methodology in searching for drug evidence on his computers. In *Brooks*, the Tenth Circuit clarified: "At the outset, we disagree . . . that the government was required to describe its specific search methodology. This court has never required warrants to contain a particularized computer search strategy. We have simply held that officers must describe with particularity the *objects of their search.*" *Id*. The court further observed that the Tenth Circuit has "not required a specific prior authorization along the lines suggested in *Carey* in every computer search, *see, e.g., Campos,* 221 F.3d at 1147, nor has Brooks suggested how the search in this case would have been different with a scripted search

---

[3] Because the court finds that the agents properly complied with the search warrant, and that the search warrant was valid, there is no reason to even reach the good faith exception on the issue.

protocol." *Id*. *Brooks* controls this case, and Mr. Welch's argument fails as a result: "While the warrant could have been more artfully written, we are satisfied on these facts that it falls within the particularity requirement of the Fourth Amendment." *Id*.

The Tenth Circuit in *Campos* also outlined the unfeasibility of searching for particular computer files on a suspect's computer: "Computer storage devices . . . can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant." *Id*. at 1147. Again, the facts of this case bolster that statement because many of the alleged child pornography files did not have descriptive names. Mr. Castaldo had no way of guessing, let alone knowing, the subject matter of these files until he opened them. Even though the warrant failed to state a particular description of what files were subject to be searched, it would have been impossible and impracticable to do so. The description in the warrant indicated that any drug records were subject to seizure and thus "enabled the searcher to reasonably ascertain and identify the things authorized to be seized." *Wolfenbarger*, 696 F.2d at 752.

### 3.    **Conclusion**

For the reasons above, the court agrees with the government that the agents acted within the bounds of the Fourth Amendment in executing the search for the precursor

chemicals and the glassware, as well as in executing the searches for evidence on Mr. Welch's computers.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Welch's motions to suppress are denied.

**IT IS SO ORDERED** this 18th day of November, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge